IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ALAN TANNENBAUM, M.D., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 03-1410 |
| | : | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.                                                                                          June __, 2010

    Plaintiff, Alan Tannenbaum, M.D., filed this action in March 2003 seeking damages and

other relief for defendants' failure to pay him benefits under certain long and short term disability

insurance policies, and alleged mishandling of his request for such benefits, following a motor

vehicle accident that left him unable to continue in practice as a pediatrician.  Three counts of

plaintiff's third amended complaint remain pending against two defendants—Unum Life

Insurance Company of America ("Unum Life" or "Unum") and the Albert Einstein Healthcare

Foundation ("Einstein").[1]  Unum Life and Einstein have filed a joint motion for summary

judgment as to those three remaining counts, which assert claims under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for breach of fiduciary duty

(Count I), failure to provide certain records requested by plaintiff (Count II), and long and short

_____

[1] The court dismissed the other four counts of plaintiff's third amended complaint by
order dated September 15, 2006.  *Tannenbaum v. Unum Life Ins. Co. of Am.*, No. 03-1410, Order
(Sept. 15, 2006).  Because that order dismissed all of plaintiff's claims against UnumProvident
Corporation, the third defendant in the case, the court thereafter dismissed UnumProvident as a
party to this action.  *Tannenbaum*, No. 03-1410, Order (June 15, 2009).

term disability benefits (Count III).  Because plaintiff's claims for breach of fiduciary duty and for benefits have become moot, and because neither defendant can be liable for failing to provide the one plan document at issue as a matter of law, the court will grant plaintiff's motion.

## I.     Facts[2]

Prior to April 1, 2002, plaintiff worked as a pediatrician in a practice owned by Einstein Community Health Associates.  (*See* Defs.' Mot. for Summ. J. & Statement of Material Facts ["Defs.' Statement"] ¶ 9; Pl.'s Resp. to Defs.' Mot. for Summ J. & Counter-Statement of Material Facts ["Pl.'s Resp."] ¶ 9; Pl.'s Ex. 1, Certification of Alan Tannenbaum, M.D. ["Pl.'s Certification"] ¶ 7.)  As an employee of Einstein Community Health Associates, plaintiff was a participant in two employee welfare benefit plans sponsored by defendant Einstein: (1) a group long term disability insurance plan (the "LTD Plan"), which provided benefits pursuant to a group long term disability policy issued by Unum Life to Einstein, and (2) a group self-insured short term disability plan (the "STD Plan") that was self-funded by defendant Einstein.  (*See* Defs.' Statement ¶¶ 6, 8-10; Pl.'s Resp. ¶¶ 6, 8-10.)[3]

Plan documents identify Einstein as the plan administrator for both the LTD and the STD Plan.  (3d Am. Compl., Ex. 5 at 23 (LTD Plan certificate of coverage); *id.*, Ex. 6 at STD-11 (STD summary plan description); *see* Defs.' Statement ¶¶ 28, 33; Pl.'s Resp. ¶¶ 28, 33.)  Unum

---

[2] For purposes of this summary judgment motion, the court must accept the plaintiff's evidence as true and draw all reasonable inferences in his favor.

[3] Prior to becoming a participant in these plans, plaintiff purchased two individual long-term disability insurance policies issued by Unum Life (collectively, the "ID Policies").  (3d Am. Compl. ¶¶ 22-23.)  The court previously concluded that the ID Policies were governed by ERISA and held that ERISA preempted plaintiff's state law claims concerning those policies.  *See Tannenbaum*, No. 03-1410, Mem. & Order (Sept. 15, 2006).

Life served as the claims administrator for both plans. (Defs.' Statement ¶¶ 33, 38; Pl.'s Resp. ¶¶ 33, 38; *see also* 3d Am. Compl., Ex. 6 at STD-11 (STD summary plan description).)

On December 1, 2000, plaintiff was involved in a motor vehicle accident, which left him seriously injured. (*See* Pl.'s Certification ¶¶ 2-3.) After a one-week hospitalization and four to five weeks of bed rest, plaintiff returned to work in January 2001, while continuing to undergo physical therapy for his injuries. (*Id.* ¶ 4.) Plaintiff experienced increasing difficulty performing his duties because of the physical pain, discomfort, and inability to focus caused by his neck injury, and his treating surgeon advised that he should stop working due to his injuries. (*Id.* ¶¶ 5-6.) On April 1, 2002, plaintiff stopped working as a pediatrician because he could no longer perform his duties due to the pain. (*Id.* ¶ 7.)

Plaintiff thereafter submitted an application for disability benefits to Unum Life in early June 2002.[4] (Defs.' Statement ¶¶ 41-42; Pl.'s Resp. ¶¶ 41-42; *see also* Defs.' Ex. 8.) Between June and October 2002, Unum Life obtained medical records from plaintiff's doctors, had surveillance conducted of plaintiff, and referred his claim for medical review. After the medical file review was completed, Unum Life denied plaintiff's disability claim by letter dated October 4, 2002, concluding that plaintiff had "no restrictions or limitations which would limit [or] preclude [him] from performing the material and substantial duties of [his] occupation as a pediatric physician on a full-time basis." (Defs.' Ex. 34.) In particular, Unum Life found

---

[4] Although plaintiff contacted Human Resources at Einstein around the time he stopped work to request an application for benefits, he was told that he was not entitled to any benefits until after he had been out of work for ninety days and that he should not apply for benefits until shortly before the ninety-day period expired. (Pl.'s Certification ¶¶ 8-9.) On the basis of this advice, plaintiff did not complete an application for benefits until June 5, 2002, when he learned for the first time that, in fact, the application should have been filed within the first thirty days of disability. (*Id.* ¶¶ 10-11.)

plaintiff's complaints of impairment to be "not credible" in light of his observed activities, which included playing golf without using a golf cart with no apparent discomfort or limitation. (*See id.*)[5]

On November 11, 2002, plaintiff's counsel wrote to Unum Life, advising that plaintiff wished to appeal the denial of his long term disability claim and formally requesting "all information which was reviewed by [Unum's] in house orthopedic surgeon for purposes of the evaluation of [plaintiff's] claim." (Defs.' Ex. 36.) Unum Life responded by letter dated November 22, 2002, which purported to enclose the information counsel had requested.[6] (Defs.' Ex. 37.)

In December 2002 and January 2003, plaintiff's counsel provided Unum Life with several additional medical reports and other documents, and made an additional request for records. (*See* Defs.' Exs. 39-40, 44, 46, 49, 51-52, 55.) Meanwhile, in December 2002 Unum Life obtained a second medical file review, which was updated on January 21, 2003, in light of additional

---

[5] While plaintiff's application was under review, Unum Life paid him benefits under his ID policies for three months—July, August, and September 2002—under a reservation of rights. (*See id.*; Pl.'s Certification ¶ 12.) Unum Life's October 4, 2002, letter denying plaintiff's claim requested return of the $36,208.13 he had been paid in ID benefits. (Defs.' Ex. 34.)

[6] The parties dispute when Unum Life received Weinberg's November 11 letter and whether Unum Life provided counsel with copies of all documents in the administrative file (*see* Defs.' Statement ¶¶ 69-70; Pl.'s Resp. ¶¶ 69-70 & n. 53), but these disputes are not material to the instant summary judgment motion.

In addition, plaintiff disputes that this and other communications regarding plaintiff's claim came from Unum Life, instead characterizing the communications as having been sent by UnumProvident. (*See, e.g.*, Pl.'s Resp. ¶ 70 (admitting "that Defendants' Exhibit 37 is a copy of a letter from UnumProvident").) The court notes that the communications that plaintiff characterizes in this manner appear on letterhead that bears both the name "UnumProvident" and the name "Unum Life Insurance Company of America." (*See, e.g.*, Defs.' Ex. 37.) Because the precise identity of the company sending the communication is not material to disposition of the claims at issue, the court will refer to the communications as having been sent by Unum Life.

medical evidence that plaintiff had submitted.  (Defs.' Exs. 47, 50.)  Although the reviewer—William M. Strasberg, M.D.—initially concluded on December 30, 2002, that plaintiff "would appear to be able to function in his former capacity as a practicing pediatrician" (Defs.' Ex. 47), after reviewing the additional medical evidence, he determined on January 21, 2003, that he was "unable to provide a definitive opinion regarding the insured's functional capacity and ability to work clinically as a pediatrician."  (Defs.' Ex. 50.)  He recommended  "an additional paper file review by a surgeon who operates on the cervical spine, as a mechanism to provide the most thorough and fair assessment of this claim" and also noted that "Psych Unit resources would be able to determine better support for any reports of cognitive impairments by the insured."  (*Id.*)

On January 31, 2003, Unum Life wrote to plaintiff's counsel, advising that Unum's on-site physician had completed his medical review of plaintiff's file and requesting that plaintiff undergo two independent medical examinations—an evaluation with a spinal surgeon specializing in cervical spine conditions and a neuropsychological evaluation—to assist Unum in making a more informed determination on plaintiff's appeal.  (Defs.' Ex. 53.)  Plaintiff's counsel responded by letter dated February 4, 2003, in which he requested "a copy of Unum's on-site physician's report including a list of all information used in this review" as well as "the entire contents of [Unum's] file/record" and "any other document upon which this plan is operated." (Defs. Ex. 56.)  Unum Life again wrote to plaintiff's counsel on February 6, 2003.  (Defs.' Ex. 57.)  Unum advised that it was declining counsel's request for the on-site physician's review but did not address the remainder of counsel's request.  (*Id.*)

On February 12, 2003, another attorney for plaintiff wrote to the "Plan Administrator" of

the Albert Einstein Healthcare Foundation.  (Pl.'s Ex. 7.)  Noting that the letter was directed to the recipient's attention "as the Plan administrator of the Long Term Disability Income Plan," counsel requested, "[p]ursuant to all relevant provisions of [ERISA]," that his office be provided with "a copy of the entire contents of [plaintiff's] administrative record/claims file and any documents under with [sic] the Plan is established or operated."  (*Id.*)[7]

The following day, plaintiff's counsel wrote to Unum Life, following up on Unum's February 6 letter denying counsel's February 4 record request.  (Defs.' Ex. 60.)  Observing that Unum Life had not responded to all of the concerns expressed in the February 4 letter, counsel remarked that he did not believe "that you have provided us with the entire contents of the administrative record developed until the date of your initial denial and any documents under which the Plan is operated."  (*Id.*)  Counsel requested that such documents be provided immediately, to the extent not already produced.  (*Id.*)  Unum Life responded on February 20, 2003, advising that to the best of Unum's knowledge, counsel had received a copy of all documents contained in plaintiff's claim file as of February 10, 2003, and purporting to enclose copies of the underwriting files prepared at the time plaintiff applied for individual disability coverage as well as copies of the policy and rider terms governing plaintiff's individual disability claims.  (Defs.' Ex. 64.)[8]

_____

[7] Einstein responded to this request on March 7, 2003, purporting to enclose "a copy of the Group Long Term Disability Plan as well as a copy of the documents in Dr. Tannenbaum's file."  (Defs.' Ex. 74, Decl. of Peggy Linneman ["Linneman Decl."] ¶ 3 & correspondence attached thereto.)

[8] Plaintiff's counsel continued to believe that Unum Life had failed to provide all relevant documentation concerning the denial of benefits and made a further request for records on February 27, 2003, to which Unum responded on March 21, 2003.  (*See* Defs.' Exs. 68-69.)

On February 20 and 24, 2003, Unum Life wrote to plaintiff's counsel advising him that the two independent medical examinations had been scheduled for March 7, 2003 (neuropsychological evaluation), and March 31, 2003 (spinal surgeon). (Defs.' Ex. 65.)

On March 4, 2003, while plaintiff's appeal of the denial of his claim for benefits was still pending, plaintiff filed (but did not serve) the original complaint in this lawsuit. (*See* Defs.' Ex. 70.) The complaint named Unum Life and Einstein as defendants and asserted the same three ERISA claims at issue here—for breach of fiduciary duty, failure to provide records, and disability benefits—as well as claims for breach of contract and bad faith. (*See id.*)

Notwithstanding that suit had been filed three days earlier, the independent neuropsychological evaluation of plaintiff by Bruce N. Eimer, Ph.D., went forward, as scheduled, on March 7, 2003. Eimer completed a report of his evaluation on March 20, 2003, in which he concluded that plaintiff was "not able to perform the substantial and material duties of his occupation." (Defs.' Ex. 72.)[9]

On April 3, 2003, plaintiff's counsel wrote to Unum Life, advising that suit had been filed and enclosing a copy of the complaint, which counsel represented had been served on Unum Life on March 27, 2003. (Defs.' Ex. 70.) The letter further advised that because litigation had been commenced, plaintiff would not be attending the second independent medical evaluation, which apparently had been rescheduled for April 7, 2003. (*Id.*)

---

[9] Eimer reported that plaintiff's psychological and neurophysical test results were "consistent with the picture of a disabled professional suffering from persistent pain, secondary mood disturbance, and associated mild cognitive deficits secondary to pain and opioids." (Defs.' Ex. 72.) He went on to note that while the identified deficits were "mild," they were "NOT mild for a busy pediatric physician who is entrusted with caring for the lives of thousands of patients." (*Id.*) He also noted that there was "no evidence . . . of duplicity by the patient." (*Id.*)

On June 19, 2003, Unum Life wrote to plaintiff's counsel and reported that based on the results of the independent neuropsychological evaluation, Unum had concluded that plaintiff was disabled due to mental illness within the meaning of the long term disability policy and thus was eligible for a maximum of twenty-four months of benefits (*i.e.*, from March 23, 2003, through March 22, 2005), provided that he continued to meet the policy's definition of disability. (Defs.' Ex. 73 (June 19 letter).) The letter further advised that Unum Life would continue to assess plaintiff's physical condition and that in the event Unum concluded that he was disabled beyond March 22, 2005, due to physical conditions, plaintiff might "continue to be eligible to receive Long Term Disability benefits." (*Id.*)

Two months later, on August 20, 2003, Unum Life again wrote to plaintiff advising him that Unum had approved his application for short term disability benefits "for the duration of your employer's 360 day plan." (Defs.' Ex. 73 (Aug. 20 letter).)

The following week, on August 28, 2003, counsel for Unum Life wrote to plaintiff's counsel regarding Unum's earlier determination that the twenty-four month limitation for disabilities caused by mental illness applied to plaintiff's claim for benefits under the group long term disability policy. (Defs.' Ex. 73 (Aug. 28 letter).) The letter advised that Unum Life had reviewed this determination in light of a June 28, 2003, letter from plaintiff's counsel outlining counsel's views on the nature of the disability claimed,[10] and had "determined that the decision to apply the 24 month mental illness limitation should be reversed at this time. That is, benefits will be paid under the policy without application of the mental illness limitation." (*Id.*) The letter went on to note that Unum Life "reserve[d] the right, upon further investigation, to apply

---

[10] Counsel's June 28 letter is not part of the summary judgment record.

the mental illness limitation, as well as other relevant policy provisions," including the right to request plaintiff to undergo the orthopedic independent medical examination that had never been completed.  (*Id.*)

Defendants assert that following these decisions to approve plaintiff's claims under the STD and LTD Plans, plaintiff has received all of the benefits he is entitled to receive under the STD Plan and is continuing to receive all benefits he is entitled to receive under the LTD Plan on an ongoing basis.  (*See* Defs.' Statement ¶¶ 11-12, 106, 112; Declaration of Lisa Hyde ["Hyde Decl."] ¶¶ 5-6.)  Plaintiff does not dispute that monthly benefit payments under the LTD Plan are current and ongoing.  (*See* Pl.'s Resp. ¶¶ 11 ("Plaintiff admits that he was paid LTD benefits under defendant Einstein's LTD plan . . . beginning at the end of June, 2003 . . . ."), 114 (noting that after suit was filed, defendants "reversed themselves on all accounts, admitted that Dr. Tannenbaum is physically disabled under defendant Einstein's LTD . . . plan[], put him back on claim for future payments without any reservation of rights, and paid him almost all of his back benefits").)  Plaintiff did dispute that he had received all benefits to which he was entitled under the STD Plan, noting that, by his calculation, Einstein still owed him "approximately forty-two (42) days of benefits under its STD plan."  (Pl.'s Certification ¶ 22; *see also* Pl.'s Resp. ¶¶ 106, 112.)  However, after plaintiff raised this issue, Einstein agreed to pay him the "additional 42 days of STD benefit to which he claims he may be entitled."  (Defs.' Reply Br. 26; Defs.' Reply to Pl.'s Counter-Statement of Material Facts ["Defs.' Resp."] ¶¶ 18-19.)  Plaintiff's counsel has since confirmed that Einstein did, in fact, pay plaintiff an additional $32,307.69 in STD benefits. Thus, it is undisputed that plaintiff has received or is receiving all benefits to which he is entitled under the STD and LTD Plans.

## II.     Procedural History

As noted, plaintiff filed original complaint in this action in March 2003, before Unum

Life had rendered a decision on his appeal from the denial of his claim for benefits.[11]  Plaintiff

filed an amended complaint in June 2003, and defendants thereafter filed a motion to dismiss

Counts I, II, III, and VI, which the court granted in part and denied in part in February 2004,

dismissing Count I (the ERISA breach of fiduciary duty claim) to the extent that plaintiff sought

restitution of benefits or compensatory damages, and dismissing Count VI (the bad faith claim)

in its entirety.  *Tannenbaum*, No. 03-1410, Order (E.D. Pa. Feb. 27, 2004).

Plaintiff thereafter filed a second amended complaint in June 2004, adding

UnumProvident as a defendant, and filed a third amended complaint in June 2005.  Defendants

filed a motion to dismiss and/or for partial summary judgment directed to the third amended

complaint, which the court granted in September 2006, entering summary judgment against

plaintiff and in favor of defendants as to Counts IV–VII, which asserted state statutory and

common law claims against UnumProvident and Unum Life.[12]  *Tannenbaum*, No. 03-1410,

Order (E.D. Pa. Sept. 15, 2006).  Defendants filed the instant motion for summary judgment as to

the remaining claims January 2008.  The case was thereafter transferred to me on June 4, 2009,

and, after conference, was closed for statistical purposes while the parties participated in

settlement proceedings with Magistrate Judge Elizabeth T. Hey.  The parties having failed to

---

[11] The parties dispute whether plaintiff resorted to litigation prematurely; however, the court need not resolve this dispute in order to decide the instant summary judgment motion.

[12] As noted, because this summary judgment ruling disposed of all of plaintiff's claims against UnumProvident, the court, with the parties' agreement, thereafter dismissed UnumProvident as a party to the action in June 2009.

reach a settlement, the court held oral argument on the pending summary judgment motion on June 22, 2010.

## III.     Legal Standards

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Material facts are facts that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* at 255. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Where, as here, the moving party seeks summary judgment as to a claim on which the nonmovant will bear the burden of proof at trial, the nonmovant, to avoid summary judgment, must make a showing sufficient to establish each element essential to its case. *See Celotex*, 477 U.S. at 322-23.

## IV.     Discussion

### A.     Counts I and III

Defendants argue that Counts I and III of the third amended complaint are now moot

because plaintiff's claims for benefits under the LTD and STD Plans were ultimately approved, and he has received—and, in the case of the LTD Plan, continues to receive—all benefits to which he is entitled under both plans. For the reasons that follow, the court agrees.

### 1.     Count III

Count III is a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), which permits a civil action by an ERISA plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Plaintiff alleges that "the Plan" (*i.e.*, Einstein) "arbitrarily and capriciously" denied his application for benefits under the STD and LTD Plans. (*See* 3d Am. Compl. ¶¶ 99-100.)

Although, in his response to defendants' motion for summary judgment and statement of material facts, plaintiff denies defendants' assertion that Count III is moot (Pl.'s Resp. ¶ 112), he concedes that after this lawsuit was filed, defendants "reversed themselves on all accounts, admitted that [plaintiff] is physically disabled under defendant Einstein's LTD and STD plans, . . . put him back on claim for future payments without any reservation of rights, and paid him almost all of his back benefits" (*id.* ¶¶ 114-15). As to the LTD Plan, plaintiff admits that defendants have paid plaintiff "his back LTD benefits and continue to pay him through the present date, all without any reservation of rights." (Pl.'s Mem. 17 ¶ d.) Plaintiff also admits that benefits under the STD plan "were paid out in three drafts during December 2003 and January 2004." (Pl.'s Certification ¶ 18.) While plaintiff initially objected that Einstein failed to pay him for forty-two days of benefits to which he was entitled under its STD Plan (*id.* ¶ 22), Einstein, upon learning that plaintiff believed there had been a miscalculation, agreed to pay

plaintiff the "additional 42 days of STD benefit to which he claims he may be entitled" (Defs.'

Reply Br. 25-26; Defs.' Resp. ¶¶ 18-19). At oral argument, plaintiff's counsel confirmed that

after plaintiff raised this issue in his opposition to defendants' summary judgment motion,

Einstein paid him an additional $32,307.69 in STD benefits. Thus, there is no genuine factual

dispute that plaintiff has received all back benefits to which he is entitled under the LTD and

STD Plans, and that he is continuing to receive the benefits to which he is entitled under the LTD

Plan.

Although Count III of plaintiff's third amended complaint requests relief in an addition to

the disability benefits themselves (*see* 3d Am. Compl., Count III, WHEREFORE cl.),[13] plaintiff

does not contend that he is currently seeking any additional relief on his ERISA claim for

benefits.[14] To the contrary, in his opposition memorandum, plaintiff asserts that he is the

"prevailing party" on his claim for benefits based on the relief he already has secured. (*See* Pl.'s

---

[13] Plaintiff requests, for example, "[d]eclaratory and injunctive relief declaring the Plaintiff entitled to benefits from the date of application," "[a]n award of compensatory damages," and "[a]n award of prejudgment interest." (*Id.*, Count III, WHEREFORE cl. ¶¶ (b)-(d).)

[14] Plaintiff has stated his intention to seek an award of attorney fees pursuant to 29 U.S.C. § 1132(g), both at oral argument and in his opposition memorandum. (Pl.'s Mem. 19 n.66 (noting that plaintiff will be preparing and filing a petition for attorney fees and costs); *see also* 3d Am. Compl., Counts I-III (requesting "[a]n award of reasonable counsel fees, including costs of this suit, pursuant to ERISA 29 U.S.C. § 1132(g)").) However, a request for such fees does not preserve a claim that otherwise has become moot. *E.g.*, *Johansen v. United States*, 506 F.3d 65, 70 (1st Cir. 2007); *Liu v. INS*, 274 F.3d 533, 536 (D.C. Cir. 2001); *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981); *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990) (a plaintiff's "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"); *cf. Wash. Hosp. Ctr. Nat'l Rehab. Hosp. v. Collier*, 947 F.2d 1498, 1502 (D.C. Cir. 1991) (recognizing exception to this rule where attorney fees were an element of the plaintiff's contract damages).

Mem. 16-20.)[15]  Moreover, at oral argument, plaintiff's counsel conceded that plaintiff is not

entitled to any further benefits and stated that he would not object to a finding that plaintiff's

claim for benefits is moot because the benefits plaintiff sought to recover have been paid.

Because there is no genuine factual dispute that defendants have paid—and, in the case of

the LTD plan, continue to pay—plaintiff the "benefits due to him under the terms of [the LTD

and STD Plans]," 29 U.S.C. § 1132(a)(1)(B), and because plaintiff does not seek any additional

relief pursuant to § 1132(a)(1)(B), the court concludes that Count III of plaintiff's third amended

complaint is moot.  *See Silk v. Metro. Life Ins. Co.*, 310 F. App'x 138, 139 (9th Cir. 2009)

(insurer's payment of long term disability benefits under ERISA plan mooted plaintiff's claim to

such benefits).  The court will therefore dismiss that Count.  *See Hall v. GMAC Mortgage Corp.*,

258 F. App'x 448, 449 (3d Cir. 2007) (affirming district court's grant of defendant's motion for

summary judgment as to plaintiff's breach of contract claim, finding that the district court

"properly dismissed [the] breach of contract claim as moot").

### 2.    Count I

Count I is an ERISA claim for breach of fiduciary duty.  Plaintiff alleges that defendants

breached fiduciary duties owed to him under ERISA by their delay and mismanagement in

handling his application for disability benefits and by providing false and misleading information

to him.  (*See* 3d Am. Compl. ¶¶ 90-92.)  As noted, Count I was the subject of an earlier motion to

dismiss, which the court granted in part by order dated February 27, 2004.  In that earlier ruling,

---

[15] As the issue of attorney fees is not currently before the court, the court need not address plaintiff's argument that he is the "prevailing party" on his claim for benefits at this time.  The court notes that the Supreme Court recently clarified that § 1132(g)(1) does not limit the availability of attorney fees to "prevailing parties."  *Hardt v. Reliance Standard Life Ins. Co.*, No. 09-448, 2010 WL 2025127 (U.S. May 24, 2010).

the court dismissed the breach of fiduciary duty claim "to the extent Plaintiff seeks restitution of benefits and compensatory damages," finding such relief to be a legal remedy not available under 29 U.S.C. § 1132(a)(3)(B), which authorizes a civil action to obtain "appropriate equitable relief." *See Tannenbaum*, No. 03-1410, Mem. & Order at 10-12 (E.D. Pa. Feb. 27, 2004). The defendants also had argued that plaintiff's breach of fiduciary duty claim should be dismissed because plaintiff could obtain adequate relief for his injuries via his claim for benefits under § 1132(a)(1)(B); however, the court rejected this argument, observing that it was unclear, at the pleading stage, whether plaintiff would be able to prove his entitlement to benefits under § 1132(a)(1)(B). *See id.* at 5-10. The court also observed, however, that "if it is determined that Plaintiff can obtain 'adequate relief' under § 1132(a)(1)(B), then 'further equitable relief ought not be provided.'" *Id.* at 9 (quoting *Ream v. Frey*, 107 F.3d 147, 152 (3d Cir. 1997)).

Noting that plaintiff previously admitted, in his opposition to defendants' earlier motion to dismiss, that Count I does not seek relief in addition to Count III, but only in the alternative to Count III,[16] defendants argue that Count I is also moot in light of defendants' post-suit decision to approve plaintiff's claims and payment of those claims. (*See* Defs.' Mem. 13-14.)

Plaintiff does not dispute that his breach of fiduciary duty claim is an alternative theory of liability. Rather, consistent with this characterization, plaintiff argues that it was necessary for him to include such an alternative theory in his third amended complaint because of the possibility that defendants would take the position that his claim for benefits was barred by his

---

[16] As defendants note, in that earlier opposition memorandum, plaintiff asserted that he did "not seek relief under § 502(a)(3) in addition to § 502(a)(1)(B) rather he seeks relief in the alternative recognizing that he is entitled to very limited relief in the form of either the benefits due (Count III) or restitution (Count I)." (Pl.'s Resp. to Defs.' Mot. to Dismiss Counts I, II, III and VI of the Compl. 14.)

failure to provide Unum Life with written notice of claim within thirty days of the date his disability started.  (Pl.'s Mem. 27-29.)  Plaintiff further argues that defendants did in fact raise such a "late notice" defense by asserting, in their answers to the third amended complaint, the affirmative defense that plaintiff's claims are "'barred in whole or in part by virtue of one or more of the provisions of the insurance policies or plans at issue,'" and that nothing precludes defendants from seeking summary judgment based on this defense in the future.  (*See id.* at 28-29 (quoting Defs.' Answers).)  Plaintiff notes, however, that he "remains willing to stipulate to the dismissal of his breach of fiduciary duty claim if defendants agree to stipulate to dismissal of all affirmative defenses based upon 'late notice.'"  (*Id.* at 29.)

In their reply brief, defendants concede that, in fact, they "have *not* raised a late notice defense, nor could they under the facts and applicable ERISA case law."  (Defs.' Reply Br. 1.)  In view of this concession, plaintiff's breach of fiduciary duty claim is, by plaintiff's own admission, unnecessary.  Moreover, because Count I is an alternative to plaintiff's claim for benefits, which is now moot in light of plaintiff's receipt of the benefits he seeks, Count I is likewise moot, and the court will dismiss it as such.

## B.    Count II

In Count II of the third amended complaint, plaintiff alleges that defendants violated 29 U.S.C. § 1024(b) by failing to provide him with all documents he was entitled to receive in response to a November 11, 2002, written request.  (3d Am. Compl. ¶¶ 94-97.)  Plaintiff seeks an award of penalties from the date of the request to the present pursuant to 29 U.S.C. § 1132(c).  (*Id.*, Count II, WHEREFORE cl. ¶ (a).)

Section 1024(b) provides, in relevant part, that

> [t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4) (footnote omitted). Section 1132(c) authorizes imposition of penalties against an administrator who fails to comply with such a written request, providing that

> [a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

*Id.* § 1132(c)(1).

Although, as noted, Count II focuses on plaintiff's written request for documents dated November 11, 2002, plaintiff now concedes that that letter did "not request ERISA plan documents with the degree of specificity required pursuant to the U.S. Court of Appeals for the Third Circuit's 2007 decision in [*Kollman v. Hewitt Associates, LLC*, 487 F.3d 139 (3d Cir. 2007)]." (Pl.'s Resp. ¶ 133; *see also id.* ¶ 152.) Plaintiff thus admits that he has no claim pursuant to § 1132(c)(1) based on the November 11, 2002, letter. (*See* Pl.'s Resp. ¶¶ 133, 152.)

Plaintiff nevertheless argues that summary judgment should not be granted as to Count II because defendants failed to provide him with documents to which he was entitled under § 1024(b)(4) in response to later—and more specific—written requests. (*See* Pl.'s Opp'n 29-34.) In particular, plaintiff asserts that he is entitled to penalties under § 1132(c)(1) based on defendants' failure to provide him with a copy of Einstein's STD summary plan description in response to written requests he made to each of them in February 2003. (*See id.*)

### 1. February 12, 2003, Request to Einstein

On February 12, 2003, plaintiff's counsel sent a letter to the attention of the "Plan Administrator" of the "Albert Einstein Healthcare Foundation," which consisted of the following three paragraphs:

> Dear Sir/Madam:
>
> Please be advised that this law firm represents Dr. Tannenbaum with respect to his claim for disability benefits. This correspondence is directed to your attention as the Plan administrator of the Long Term Disability Income Plan.
>
> Pursuant to all relevant provisions of the Employee Retirement Income Security Act (ERISA) please provide this office with a copy of the entire contents of Dr. Tannenbaum's administrative record/claims file and any documents under with [sic] the Plan is established or operated. We will expect timely compliance with this request as mandated by ERISA.
>
> If you have any questions or concerns please do not hesitate to contact me.
>
> Very truly yours,
>
> Edward J. Foley

(Pl.'s Ex. 7.) An attorney for Einstein responded to counsel's request on March 7, 2003, enclosing "a copy of the Group Long Term Disability Plan as well as a copy of the documents in Dr. Tannenbaum's file" and advising plaintiff's counsel to contact her "[i]f you have any further questions." (Defs.' Ex. 74, Linneman Decl. ¶ 3 & correspondence attached thereto.) Plaintiff challenges Einstein's failure to provide him with a copy of the STD summary plan description in response to his counsel's February 12 letter. (*See* Pl.'s Opp'n 32-33.) Defendants argue that Einstein cannot be liable under § 1132(c)(1) because the February 12 letter was insufficiently specific to put Einstein on notice that plaintiff was seeking the STD plan. (Defs.' Reply Br. 7-9.) The court agrees.

Section 1024(b)(4) requires a plan administrator to provide copies of certain plan documents "upon written request of any participant or beneficiary." Thus, to establish a basis for the imposition of penalties pursuant to § 1132(c)(1), plaintiff must show "that he made a written request to the plan administrator . . . and that the administrator failed to respond within thirty days." *Kollman*, 487 F.3d at 144. The Third Circuit has adopted a "clear notice" test to determine whether a written request for a plan document has been made. *Id.* at 145. Under this test, a request for documents is not "*per se* inadequate because it fails to specifically name the documents sought. Rather, the touchstone is whether the request provides the necessary clear notice to a reasonable plan administrator of the documents which, given the context of the request, should be provided." *Id.* at 146.

Applying these standards, the court concludes as a matter of law that counsel's February 12 letter does not provide the requisite "clear notice" that counsel was requesting the STD summary plan description. As noted, counsel specifically directed his request to Einstein "as the Plan administrator of the *Long Term Disability Income Plan*." (Pl.'s Ex. 7 (emphasis added).) The letter then goes on, in the very next sentence, to request "any documents under with [sic] the Plan is established or operated." (*Id.*) In light of counsel's express reference to the Long Term Disability Income Plan—and in the absence of any reference whatsoever to the STD Plan or STD benefits—this request cannot reasonably be interpreted as a request for the STD summary plan description. No reasonable jury could decide otherwise. Accordingly, the court will grant the motion for summary judgment as to Count II as to Einstein.

### 2. February 13, 2003, Request to Unum Life

On February 13, 2003, plaintiff's counsel wrote to Unum Life, following up on Unum's

response to an earlier document request.  (Defs.' Ex. 60.)  Noting that he did not believe that

Unum Life had provided plaintiff "with the entire contents of the administrative record

developed until the date of your initial denial and any documents under which the Plan is

operated," counsel again requested that such records be provided:

> Please immediately provide us with any such contents of Dr. Tannenbaum's
> administrative record and the documents under which the Plan is operated that
> you have not yet provided to us.

(*Id.*)  Counsel went on to express his belief that "this is a reasonable request and in fact is

mandated by all relevant provisions of ERISA."  (*Id.*)

Defendants argue that Unum Life cannot be liable under § 1132(c) because it is not a plan

administrator.[17]  Here, too, the court agrees.

Section 1024(b)(4) imposes a duty to provide certain plan documents to participants or

beneficiaries upon "[t]he administrator."  Section 1132(c)(1) authorizes the imposition of

penalties upon "[a]ny administrator" who fails to do so.  As plaintiff acknowledges (Pl.'s Opp'n

30), for purposes of ERISA,

> [t]he term "administrator" means—
>
> (i) the person specifically so designated by the terms of the instrument under
> which the plan is operated;
>
> (ii) if an administrator is not so designated, the plan sponsor; *or*

---

[17] Defendants also argue that notwithstanding the arguments in plaintiff's opposition memorandum, any claim against Unum Life pursuant to § 1132(c)(1) is foreclosed by his admission, in his response to defendants' motion and statement of material facts, that "pursuant to *Kollman*, summary judgment should be entered in favor of defendant Unum Life on Count II of plaintiff's Third Amended Complaint."  (Pl.'s Resp. ¶ 153.)  Because the court concludes that plaintiff's § 1132(c)(1) claim against Unum Life fails on the merits, the court need not address this argument.

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A) (emphasis added).

As plaintiff concedes, plan documents for both the LTD and the STD Plans specifically designate Einstein as the plan administrator. (Defs.' Statement ¶¶ 28, 33; Pl.'s Resp. ¶¶ 28, 33.) Therefore, Einstein—and not Unum Life—is the "administrator" for purposes of the statute. Plaintiff argues that by its use of the phrase "[a]ny administrator," § 1132(c)(1) "clearly contemplates the possibility of more than one 'administrator'" (Pl.'s Opp'n 31), but § 1002(16)(A), which provides three *alternative* definitions for the term "administrator," states otherwise.

The law is clear that § 1132(c)(1) "only gives . . . a remedy against the plan 'administrator.'" *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 945 (9th Cir. 2008) (insurance company that made benefits determinations under employer's ERISA plan as insurer could not be liable under § 1132(c)(1) because it was not "the plan administrator"); *see also Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) (plaintiffs could not recover statutory damages under § 1132(c)(1) against insurance company that served as claims administrator for ERISA plan as defendant was "not a plan 'administrator' within the meaning of [§ 1132(c)(1)]"); *VanderKlok v. Provident Life & Accident Ins. Co., Inc.*, 956 F.2d 610, 618 (6th Cir. 1992) (where employee benefit plan designated plaintiff's employer as the plan administrator, only the party so designated, and not insurance carrier, could be held liable under § 1132(c)). Because it is undisputed that Unum Life is not a plan administrator, § 1132(c)(1) does not authorize penalties against Unum Life as a matter of law. Accordingly, the court will

grant defendants' motion for summary judgment as to Count II as to Unum Life.[18]

## IV.     Conclusion

For the reasons set forth above, the court will grant defendants' motion for summary judgment.  Because plaintiff's ERISA claims for breach of fiduciary duty and for benefits are moot, the court will dismiss as moot Counts I and III of the third amended complaint.  Because there is no basis for imposition of penalties on either defendant pursuant to 1132(c)(1), judgment will be entered in favor of defendants and against plaintiff as to Count II.  An appropriate order accompanies this memorandum.

---

[18] Although plaintiff opposed defendants' motion for summary judgment as to Count II in its entirety in his legal memorandum, at oral argument, plaintiff's counsel conceded that Unum Life is entitled to judgment on this claim.  Summary judgment is also appropriate on this alternative basis.